United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL DONOHOE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Case No. 18-cv-01266-RS<br><br>**ORDER DENYING MOTIONS TO DISMISS OR TRANSFER** |

## I. INTRODUCTION

Plaintiff Gabriel Donohoe brings this action against his former employer, defendant Federal Express Corporation ("FedEx"), alleging federal and state claims for disability discrimination and retaliation. FedEx moves to dismiss the first amended complaint ("FAC"), on the grounds that Donohoe has failed to exhaust his administrative remedies with respect to his FEHA and retaliation claims, and that his claims for relief are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. In the alternative, FedEx seeks to transfer this action to the Western District of Tennessee. For the reasons explained below, both motions are denied.

## II. BACKGROUND[1]

---

[1] All facts recited in this section are drawn from the FAC and taken as true for the purposes of deciding this motion. Although FedEx urged that this motion should be converted into a motion for summary judgment, and that evidence outside the pleadings should be considered, those requests are denied.

Donohoe was employed by FedEx as a pilot from around 2006 through November 2016. For the entire duration of his employment with FedEx, Donohoe was a resident of California and paid California income taxes on his earnings. Donohoe suffered from muscular pain in his chest, ribs, and left arm for a number of years. In August 2015, the pain began to affect Donohoe's range of motion and in September of that year he called in sick and did not perform any flying assignments for the next seven months. In April 2016, Donohoe requested to return to work, providing FedEx management with a note from his doctor as well as a FAA medical certification approving him to fly. A FedEx employee who responded to Donohoe's inquiry represented that his return to work was contingent on a review of his entire medical file. FedEx later sent Donohoe a follow-up letter, clarifying that he would not be reinstated until he "provided adequate information to permit the Company's aeromedical advisor to properly evaluate your fitness to perform pilot duties."

Donohoe objected to a review of his entire medical file and indicated to FedEx that he believed he had provided the necessary documentation supporting his return to work. He exhausted his sick leave at the end of August 2016 and was placed on a personal leave of absence that began on September 1. On September 20, 2016, Donohoe received a letter from his supervisor, who threatened him with discipline if he did not provide access to his private medical file. After he again declined to do so, Donohoe received a "Notice of Preliminary Hearing" dated October 13, 2016, for the purpose of investigating his purported subordination. Donohoe responded in an email to his supervisor that he would not attend the hearing in person but was willing to appear telephonically. He did not receive a substantive response to his request and consequently did not participate in the hearing. On November 10, 2016, Donohoe received a "Preliminary Hearing Decision and Notice of Termination," which stated that his employment with FedEx was terminated effective November 11, 2016. FedEx's decision to terminate him, Donahoe argues, constitutes discrimination on the basis of disability under the California Fair Employment and Housing Act ("FEHA"), the Americans with Disabilities Act ("ADA"), and the public policy of the State of California. He also seeks to hold FedEx liable for retaliation and

failure to engage in a good faith interactive process.

### III. LEGAL STANDARD

**A. Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction over the asserted claims. It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court considering a 12(b)(1) motion to dismiss is not limited to the pleadings, *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), but may rely on extrinsic evidence to resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Once a challenge has been raised to the court's subject matter jurisdiction, the party opposing dismissal must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201; *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the

"lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted).

### B. Motion to Transfer

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The district court has discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The court must weigh multiple factors in determining whether transfer is appropriate in a particular case. *Jones*, 211 F.3d at 498.

Those factors may include:

> (1) The location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498 (citing *Stewart*, 487 U.S. at 29-31).

A plaintiff's choice of forum ordinarily is given substantial weight. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). That is less so, however, where the plaintiff does not reside in the forum and/or there is no particular connection between the controversy and the forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal.

2001) ("[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint.").

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

FedEx argues that Donohoe failed to exhaust his administrative remedies because his April 25, 2017, Department of Fair Employment and Housing ("DFEH") complaint named fourteen corporate entities, none of which were proper defendants. FedEx, Donohoe's former employer, was not among those entities named. Donohoe responds that he later took steps to correct his DFEH and corresponding Equal Employment Opportunity Commission ("EEOC") charges to name the correct entity. He also contends FedEx nonetheless should have been on notice of his administrative complaint because he attempted to send notice to various addresses he reasonably believed to be associated with FedEx, and because his administrative charges described the employment actions that gave rise to his lawsuit. Thus, while plaintiffs may not generally bring claims against entities not named in their administrative complaints, plaintiff will be found to have exhausted his administrative remedies where the charges, liberally construed, should have led a defendant to anticipate being named in a resulting legal action. *See Thompson v. DeLallo's Italian Foods, Inc.*, 63 F. Supp. 3d 1200, 1202-1205 (E.D. Cal. 2014) (citing *Wrighten v. Metropolitan Hospital*, 726 F.2d 1346, 132 (9th Cir. 1984) and *Martin v. Fisher*, 11 Cal. App. 4th 118, 122 (1992)). Here, Donohoe's EEOC and DFEH complaints were sufficient to put FedEx on notice of his intent to sue for the grievances stated therein. Therefore, he is deemed to have exhausted his administrative remedies.

FedEx's second administrative exhaustion argument is similarly unpersuasive. According to FedEx, because Donohoe's FEHA claims and claims for failure to accommodate and failure to engage in good faith interactive process were not included in his initial administrative complaint, he has failed to exhaust administrative remedies as to those claims. While the scope of a civil action alleging discrimination is limited in scope by the charge filed with the EEOC and the

DFEH, a court may consider new claims that are "reasonably related" to the allegations contained therein. *See Green v. L.A. Cty. Superintendent*, 883 F.2d 1472, 1475-76 (9th Cir. 1989). Here, Donohoe's EEOC charge, upon which the EEOC's and the DFEH's Right to Sue Notices were based, stated adequately the factual basis for his disability discrimination claims. Because his subsequent "new" claims are related to the incident described in the charge, they will be considered administratively exhausted.

### B. Federal Preemption

FedEx next argues that Donohoe's claims implicate the terms of the ALPA-FedEx Collective Bargaining Agreement ("CBA") that governs his employment, and therefore, all his claims are subject to mandatory arbitration under the RLA. The RLA, which covers the airline industry, was enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994). To facilitate this purpose, the statute provides for mandatory arbitration of two classes of disputes: "major" disputes implicating "the formation of collective bargaining agreements or efforts to secure them," and "minor" disputes concerning the meaning of collective bargaining terms in a specific factual context. *Id.* at 252-53 (internal brackets omitted). *Norris* held the RLA was intended to preempt only those minor disputes "grounded in the CBA." *Id.* at 256. "Those claims or causes of action involving rights and obligations that exist independently of the CBA are not preempted." *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996). Where a plaintiff asserts an employer violated rights protected by the CBA, it is a minor dispute subject to preemption. If, however, "a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption." *Id*. Mere reference to the terms of a CBA, rather than interpretation of those terms, is insufficient to support a finding of preemption.

Here, Donohoe contends his state-law FEHA claims and federal ADA claims are not preempted by the RLA because the Ninth Circuit has held similar claims exist independent of any CBA. *See Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) (holding plaintiff's

ADA claims not preempted by the RLA); *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1458 (9th Cir. 1996) (holding plaintiff's FEHA claims not preempted by the RLA); *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1528 (9th Cir. 1995) (holding plaintiff's FEHA claims not preempted by the LMRA). The Circuit uses a three-part test to determine if a state law is preempted under the RLA, which is identical to its test for finding preemption by the Labor Management Relations Act ("LMRA"):

> A court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract.

*Miller v. AT&T Network Systems*, 850 F.2d 543, 548 (9th Cir. 1988). Under this analysis, a state law will be preempted only if the answer to the first question is yes, and the answer to either the second or third is no. *Id.*

Because the Ninth Circuit has already applied this test to find ADA and FEHA claims not preempted by the RLA in *Saridakis* and *Espinal*, those determinations are dispositive here. As the Court explained in *Espinal*, a CBA that provides for a physical fitness requirement, but does not provide a framework for challenging a fitness determination or a mechanism to accommodate disabled workers, does not govern actions that give rise to disability discrimination claims. Because the FEHA has clear statutory and regulatory standards that set forth employers' duties under the Act, and because the right to be free from discrimination in employment on account of disability is an express policy of the State of California, the Ninth Circuit found the plaintiff's disability discrimination claims were not dependent on an interpretation of the CBA and therefore were not preempted by the RLA. *Saridakis* subsequently expanded *Espinal*'s analysis to federal ADA claims. Here, even accepting FedEx's representations that portions of the CBA cover disputes over fitness determinations and accommodations, a trier of fact need not interpret any portion of the CBA to determine whether FedEx violated its statutory duty of nondiscrimination and duty to accommodate and engage in the interactive process as required by California

Government Code Section 12940(m) & (n) and the ADA.

The same logic applies to Donohoe's state law retaliation claims. *See Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (holding the retaliation claim independent of terms in the CBA). The basic elements of a retaliation claim are: 1) an adverse employment action, and 2) evidence that the employer's motive in discharging the employee was to deter the employee from exercising statutory rights. It is well established that "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" *Norris*, 512 U.S. at 261–62 (holding that a state-law retaliatory discharge claim was not preempted by the RLA).

From FedEx's point of view, on the other hand, Ninth Circuit precedent regarding RLA preemption of disability discrimination claims is inapplicable where, as here, the actual nature of the plaintiff's grievance is a disagreement over rights and obligations accorded by the CBA. Although Donohoe makes no mention of the CBA in his complaint and frames his claims for relief without reference to its contractual provisions, such artful pleading will not necessarily defeat preemption. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219–20 (1985) (holding plaintiffs cannot avoid preemption by pleading their claims as tort causes of action, if the right sued upon is contractual in nature). According to FedEx, the substance of the right Donohoe asserts here is the right to return to work without being required to submit his medical records to the company's aeromedical advisor and obtaining that advisor's clearance to fly. Donohoe takes the position he had "in sum and substance" provided the aeromedical advisor with adequate information for the advisor to assess his fitness to resume pilot duties. *See* FAC ¶ 26. Thus the dispute between the parties, asserts FedEx, necessarily implicates specific provisions of the CBA, specifically a policy of requiring clearance from a medical advisor for all employees whose medical leave exceeds thirty days. Although Donohoe brings claims for failure to accommodate disability and failure to engage in interactive process, the accommodations referenced in the FAC do not appear closely

related to his alleged disability.² *See* FAC ¶ 23. In other words, there appears on the face of the complaint some disconnect between Donohoe's factual allegations and the claims upon which he seeks relief. That said, the thrust of his complaint raises a question as to whether the aeromedical advisor clearance requirement itself, being applied only to employees who have taken extended medical leaves, constitutes discrimination on account of disability. Because evaluating that claim against the standards set by state and federal law may be undertaken without resort to the CBA, RLA preemption does not apply.³

**C. Motion to Transfer**

In the event Donohoe's claims go forward, FedEx asks that this action be transferred to the Western District of Tennessee, which has federal question subject matter jurisdiction over Donohoe's federal ADA claim and supplemental jurisdiction over his state law claims. According to FedEx, venue is proper in the Western District of Tennessee because FedEx's corporate offices are in Memphis and all of the events giving rise to Donohoe's claims took place there. Although Donohoe objects that his California state law claims could not have been brought in the Western District of Tennessee, he is mistaken. While it is true California labor law does not govern employment actions in Tennessee, were there to be a determination that the challenged employment action took place in Tennessee, his California state law claims may be subject to

---

² Donohoe faults FedEx for failing to accommodate two requests: first, his insistence on withholding his full medical file from the company's aeromedical advisor, and second, his request to attend his preliminary disciplinary hearing telephonically rather than in person. Neither of these requests, however, appear to be connected to Donohoe's alleged disability. He says he refused to provide access to his medical file out of concern for his privacy and he refused to attend the hearing in person because it was going to take place in Memphis, Tennessee. *See* FAC ¶¶ 29, 31.

³ Because the public policy implicated by Donohoe's wrongful termination claims is California's policy of not permitting discrimination in employment based on disability, RLA preemption does not apply to that claim as well. The Ninth Circuit has also declined to find RLA preemption with respect to state-law invasion of privacy claims. *See Cramer v. Consolidated Freightways*, 255 F.3d 683, 695 (9th Cir. 2001) (finding no preemption where plaintiffs' invasion of privacy claims could be analyzed pursuant to a state statute prohibiting the use of two-way mirrors). As Donohoe points out, California has a specific framework for analyzing claims for invasion of privacy under the California constitution, allowing his claim to be adjudicated without reference to the CBA. *See Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 32-37 (establishing California's framework).

dismissal whether or not the case remains in this district. In other words, questions of venue do not necessarily implicate choice of law issues, and federal courts are frequently called upon to adjudicate claims governed by the law of a state other than the one in which the court sits.

Thus, assuming venue is proper in the Western District of Tennessee, consideration must be given to the factors governing a motion to transfer the action out of this district. Donohoe has chosen to bring his claims here. A plaintiff's choice of forum is generally entitled to deference, particularly where he has chosen to sue in his home jurisdiction. The cases FedEx offers to the contrary all involve airline pilots' suits under Title VII, which has its own, narrower, venue statute. Moreover, the doctors whom Donohoe visited regarding his disability, and who provided him with medical releases to return to work, both live in the San Francisco Bay Area. These contacts are sufficient to support Donohoe's entitlement to the forum of his choice.

On the other hand, FedEx points out that Donohoe here raises a challenge to an employment decision that took place in Memphis. All of the witnesses who were involved in that decision, and who could testify as to the circumstances surrounding that decision, are in Tennessee. FedEx also intends to argue Donohoe's termination was proper under the terms of the CBA, which is administered in Tennessee by individuals who work and reside in Memphis. FedEx's proposed witnesses, however, are all employees of FedEx whose presence in California for trial or some other proceeding can be assured by their employer. By contrast, Donohoe's doctors are non-party witnesses who cannot be compelled to testify in Tennessee. Were this case transferred out of California, Donohoe argues, he may be deprived of their testimony. In short, transferring this case to the Western District of Tennessee would merely shift the inconvenience of litigation from FedEx to Donohoe. Therefore, the convenience to the parties and witnesses factors weigh against transfer. Transfer would also put this action before a court that is likely to be less familiar with Donohoe's California state law claims, with little potential to generate substantial litigation cost savings given the availability of electronic discovery. On balance, because the Section 1404(a) factors taken together do not tip decisively toward transferring the case to the Western District of Tennessee, FedEx's motion will be denied.

## V. CONCLUSION

For the reasons set forth above, FedEx's motions to dismiss or transfer are denied.

**IT IS SO ORDERED**.

Dated: July 2, 2018

_____
RICHARD SEEBORG
United States District Judge